## William Stewart and others v. Charles A. Bailey and another.

*Guardian's sales : Sale bond : Probate proceedings : Ejectment : Bona fide purchaser.* The absence of a sale bond in the probate proceedings for a guardian's sale of lands, although no such bond appears to have been ordered by the probate court, is a fatal defect, and one which is open to the wards in their suit for the lands against even a *bona fide* purchaser; notwithstanding the peculiar wording of the statute (*Comp. L.*, § *4622, Sub. 2*), "in case any bond was required," etc., it is held, construing the whole chapter together, that a sale bond is in all cases essential, and that no discretion is lodged with the probate judge in this regard, nor is any express or formal order required.

*Submitted on briefs October 22. Decided October 28.*

Error to St. Clair Circuit.

*B. C. Farrand* and *D. C. Holbrook,* for plaintiffs in error.

*A. E. Chadwick,* for defendants in error.

GRAVES, J.

This was an ejectment by the defendant in error Charles A. Bailey, and his brother, George Bailey Ashley, who, at his birth, was called George Bailey, as sole heirs of their father, George H. Bailey, who died in 1854. The suit was brought for the north twenty-four feet of lot 17,.

in block 57, on White's plat of part of the city of Port
Huron, and was tried by the court, sitting without a jury.

A special finding was made, and thereupon judgment
was given in favor of the plaintiffs in error as against
George B. Ashley, but against them and in favor of
Charles A. Bailey for an undivided half of the premises
claimed, and they then sued out this writ of error.

It was found that the plaintiffs in error were in posses-
sion, that Stewart claimed to be owner as grantee of one
Alvah Sweetser, and was in fact a purchaser in good faith
from Sweetser, who had bought the premises at a sale
made on the 12th of June, 1854, by one Martin S. Gillett,
as guardian of the plaintiffs below.

The circuit judge stated the proceedings connected with
the guardian sale in his finding, and it appeared that they
were taken and conducted under *chapter 164, Compiled
Laws;* that no order was made by the probate court for
the giving of a sale bond by the guardian, that no such
bond was given, and that the only proceeding in the
nature of an order to confirm the sale consisted of an
endorsement by the probate judge on the report of the sale
by the guardian, in these terms: "Filed, approved, and
confirmed, and deed ordered to be executed to the pur-
chaser.   John McNeil, Judge of Probate." The circuit
court held that the guardian proceedings were defective for
want of a sale bond, and also for want of a proper order
of confirmation of the sale, and that these defects were
open and available to the heir in his suit for the land.
These rulings present the only questions in the case, and
that relating to the bond being the main, if not the only
substantial one, on this record, may be first considered.

The position of the plaintiffs in error is that, as the
probate court does not seem to have expressly ordered the
giving of a sale bond, but appears to have allowed the pro-
ceedings to go on without one, that therefore the provis-
ions of § *4622* of the chapter serve to afford protection to
Stewart, a *bona fide* purchaser under the guardian's sale,

against ejectment by the heir. The section referred to is as follows:

"In case of an action relating to any estate sold by a guardian under the provisions of this chapter, in which the ward, or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

*First.* That the guardian was licensed to make the sale by a probate court of competent jurisdiction;

*Second.* That he gave a bond which was approved by the judge of probate, in case any bond was required by the court upon granting the license;

*Third.* That he took the oath prescribed in this chapter;

*Fourth.* That he gave notice of the time and place of sale as prescribed by law; and

*Fifth.* That the premises were sold accordingly by public auction, and are held by one who purchased them in good faith."

It is certainly true that the terms of the second subdivision of this section, when considered apart from the other numbers of the chapter, would seem to imply that there might be cases within the chapter where the giving of such a bond would not be imperative, or cases where the probate court would have discretionary authority to require or not to require one to be given. But the whole chapter must be read and construed together in order to reach a safe conclusion, and when we come to examine it throughout, we find that in every instance where a sale is authorized, a sale bond is expressly and imperatively required; that the probate court is not permitted in any case to exercise discretion as to whether it should be given or might be dispensed with, and it is neither provided or apparently contemplated that any order or decision of the court should be entered or made on the subject.

The law appears to assume that the mandate, that in

every case a bond shall be given, is entirely sufficient for the purpose, and that being an imperative order of the legislature to the court and to all suitors, it may be considered as tacitly speaking through the court, and as answering to a requirement of the court in all cases. The provision that a sale bond shall be given, is one of great importance to the rights of wards and others having interests in their estates, and if it were to be rendered nugatory or even seriously weakened, the main ground of security for those who most need security, would, in a great variety of cases, be destroyed. Estates belonging to orphan children and to others as helpless, as weak and defenseless as children, would be liable to be dissipated and squandered without possibility of redress, or at least adequate redress, for the want of that specific security expressly and imperatively required by the law.

It is admitted that the omission to give the bond would be sufficient to overturn the sale in a direct proceeding, and this, it is claimed, is a sufficient protection. But all who are conversant with such matters know that the very circumstances which give occasion for the guardianship very often, if not generally, make any such remedy of little practical value as a shield to wards, and the records of our courts testify that as a means of self-protection the right of the ward to assail or resist the proceedings to sell property while such proceedings are in progress, and the right of review on appeal, are rights which the ward is generally unable to exert in any beneficial way. Turn the matter as we may, the propriety and policy of requiring such security is as obvious as the law is positive that it shall be given. Now may it be omitted and its omission still not operate as a defect in ejectment by the heir? If the necessity for giving it may in all cases brought by the heir be made to depend upon its being shown that the probate court superadded to the positive direction of the statute an express formal order or requirement to give it, the imperative command of the law, will be changed in its application to such

cases into a mere directory regulation, and the object and policy of the provision be essentially perverted. Against such a construction or a construction leading to such consequences, it is the duty of the court to struggle.

The structure of the second subdivision of § *4622* undoubtedly renders the clause where it stands very intractable; but viewing it in connection with the other provisions, and considering the policy of requiring security, the object of the regulations, and the spirit of the chapter, I think we are compelled to hold that the meaning of the law is that as it absolutely enjoins the giving of security in all cases, the court is always to be considered as requiring it without any express or formal order or declaration. Having reached this conclusion, it follows, in our opinion, as a proposition of law, that a bond was required by the probate court, and inasmuch as it was not given, the proceedings were fatally defective as against the defendant in error in his ejectment. As this determines the case against the plaintiffs in error, it becomes unnecessary to discuss the second and remaining question.

The judgment should be affirmed, with costs.

The other Justices concurred.