## Thomas H. Ryder and others v. Edwin Flanders.

*Ejectment: Title: Devise: Condition.* In this action of ejectment, where plaintiffs claim through a devise of their father and by deed of their mother, to whom their father had devised the lands in controversy during her life, should she so long remain his widow and unmarried, with a proviso that at her death, or on her marriage before death, the estate should revert to the children, to be equally divided between them, it is held immaterial whether the provision or condition limiting the devise to the widow was valid or not, or, if valid, whether it be in the nature of a mere condition which could only be forfeited by entry of the heirs, or a conditional limitation which determined the estate and passed it over to the heirs, *ipso facto,* upon the marriage of the widow.

*Condition subsequent: Entry: Conveyance.* If such provision or condition is valid and simply in the nature of a condition subsequent, so that the widow could continue to hold until entry made for its forfeiture, then her conveyance to the plaintiffs would have divested her of that right and vested it in the plaintiffs as completely as would an entry.

*Conditional limitation: Happening of the condition: Entry.* If valid and in the nature of a conditional limitation, then no entry was necessary, but her estate terminated and vested in the heirs immediately upon her marriage.

*Merger: Fee: Life estate.* And this devise to the widow, being in either case but a life estate, when it became vested in the owners of the fee subject only to this less estate, it was at once merged in the fee.

*Void condition: Life estate: Merger.* If such condition or conditional limitation was void, then the widow became the absolute owner of a life estate, while the heirs owned the estate subject only to that life estate, and her conveyance transferred it to the heirs and it merged in the fee.

*Guardian's sale of lands: License: Petition: Jurisdiction.* The petition of a guardian for license to sell the real estate of his ward, either to pay debts, or for the support and education of the ward, or for the purpose of investing the proceeds at interest, is required to state the purpose for which the sale is asked, and to set forth the condition of the estate and the necessity or propriety of the sale, and it seems that without such a petition the probate court gets no jurisdiction to grant a license to sell.

*Guardians' sales: Bond: Order.* The statute providing for guardians' sales of real estate for the purpose of investing the proceeds at interest, imperatively requiring the giving of a bond before the sale in every case, a sale without giving such bond, though not expressly ordered by the probate court, is invalid.

*Guardians: Oath before sale.* The guardian being imperatively required by the statute (*Comp. L. 1857,* § *3107*) to take and subscribe a prescribed oath " before fixing on the time and place of sale " under a license to sell the real estate of his ward, an oath taken only a few days before the sale, and after the giving of the notice of the sale, is held to be unauthorized and extrajudicial.

*Ejectment: Minors: Acceptance of proceeds of guardian's sale: Estoppel.* Plaintiffs in ejectment are held not estopped from setting up their title as heirs against a purchaser at a sale made by their guardian during their minority, by reason of their having accepted the proceeds of such sale after they became of age, with a full knowledge of all the facts.

*Ejectment: Legal title: Equitable defenses.* If such acceptance of the proceeds could have any force at all, it would operate only as an equitable estoppel, and would not be available in an action of ejectment, which involves the legal title only, and not equitable interests or claims.

*Submitted on briefs July 24. Decided October 15.*

## Error to Van Buren Circuit.

*Richards & Barnum,* for plaintiffs in error.

*Severens & Boudeman,* for defendant in error.

CHRISTIANCY, J.

Plaintiffs in error brought ejectment in the circuit court for the county of Van Buren for two parcels of land in that county, amounting, together, to about ninety-six acres, claiming in part as heirs and devisees of one Samuel Ryder, in part by descent, and in part by purchase from all the other heirs, as well as by a deed from the widow of said Samuel Ryder, to whom this land, with all the other lands of said Samuel, were devised during the term of her natural life, should she so long remain his widow and unmarried, and no longer; "and then, in either case" (that is, in the event of her death, or marriage before death), "the estate to revert to his children lawfully begotten, to be then equally divided between them."

It was admitted by the defendant, upon the trial, that he was in possession of the premises, as the tenant of Hiram Baker, and that said Samuel Ryder was in possession and seized of the premises in the year 1845, and so continued until March, 1850, and that his widow, or some portion of his family, continued in the occupation thereof until 1860, said Samuel having died in California, or on his way home, in 1852.

Plaintiffs also introduced evidence of their descent from said Samuel Ryder, and that of his three other children, constituting all his heirs through whom they claimed; that one of said last-named three died unmarried and without issue, in 1862, whereby his interest, as heir, passed in equal shares to his mother and each of his surviving brothers and sisters, including the plaintiffs and two others (*Comp. Laws of 1871,* § *4309, sub. 3*); that the widow married again in 1856; that she conveyed to the plaintiffs all her interest in the premises in August, 1871, and that

the other two heirs conveyed to plaintiffs their respective interests May 6, 1871.

The defendant, as tenant of one Hiram Baker, claimed, *first*, under a partition purporting to have been made on the petition of the guardian of one of the heirs (who sold to plaintiffs in 1871), presented August 4, 1857, the order for partition being dated August 31, 1857; and, *second*, a deed purporting to have been made by John Baker, as guardian of these plaintiffs, and of William B. Ryder (then minors) to said Hiram Baker, upon a sale recited to have been made December 29, 1860.

As to the partition, the record of which was very imperfect, and the proceedings, so far as shown, informal and somewhat irregular, it was claimed by the plaintiffs in error, and strenuously insisted by them upon the trial, that it was utterly void and of no effect; and the court, in his charge to the jury, though some requests had been charged looking the other way, expressly assumes that there was no valid partition, and submits the case to them upon this theory; any question upon this partition is therefore aside from the case upon the record, and we are to treat the case as if no attempt had been made to show a partition.

Before proceeding to the question of the validity of the guardian's sale, it is proper to determine whether the plaintiffs made out such a case as would have authorized a recovery if the guardian's deed was void. The plaintiffs claimed on the trial and insisted upon the argument before us, that the provision or condition limiting the devise to the widow to the time she should remain unmarried, and passing the estate over to the children upon her marriage, was void; and that consequently she took an absolute estate for life, which, with the share she inherited from the child who died without issue, passed by her deed to the plaintiffs.

But I do not think it necessary to determine this question in the present case, nor whether the provision, if valid (of which I do not intend to intimate a doubt), is in the

nature of a mere condition, which could only be forfeited by the entry of the heirs to whom the estate was, in the language of the will, to revert (of which there was no evidence), or a conditional limitation, which determined the estate and passed it over to the children and heirs, *ipso facto*, without entry, upon the marriage of the widow. *First*, if valid and simply in the nature of a condition subsequent, so that she might have continued to hold the estate until entry made for its forfeiture, her conveyance divested her of that right and vested whatever right she might have held, in the plaintiffs, as completely as an entry could have effected the same result; if valid and in the nature of a conditional limitation, then no entry was necessary, but her estate terminated and vested in the heirs immediately upon her marriage, and was, by the rest of them, conveyed to the plaintiffs; and in either case, being no more than a life estate, when it vested in the plaintiffs, or in them and the other heirs who have conveyed to them, they having already the fee, subject only to that less estate, the latter was at once merged in the fee, there being no intervening estate; and thus, in either case, the plaintiffs became seized of the entire estate in fee. *Second*, if the condition or conditional limitation was void, then she was the absolute owner of a life estate, while the children (the heirs) owned the estate in fee, subject only to that life estate, and her conveyance transferred it to the plaintiffs, her grantees, and they also having acquired the title of all the other heirs, this life estate, as in the first case, merged in the fee, and the plaintiffs, in like manner as upon the first hypothesis, became the absolute owners of the fee.

The plaintiffs must therefore be regarded as having made a case sufficient to warrant a recovery of the entire estate, unless their rights and that of William B., their brother, who died without issue, were divested by the sale made to Hiram Baker, by their guardian John Baker, in December, 1860.

We proceed, therefore, to consider the guardian's sale, and the charge of the court in connection therewith.

The court, at the request of the defendant, charged the jury that "if the jury find from the evidence that the plaintiffs, or either of them, after arriving at the age of twenty-one years, with a full knowledge of all the facts, received their proportion of the proceeds of the guardian's sale in question, they are estopped from asserting now a title to this land, and the verdict should be for the defendant." And again, "that the statute provides that the ward cannot avoid his guardian's sale of his lands on account of any irregularity in the proceedings: *provided* it shall appear, *first*, that the guardian was licensed to make the sale by a court of competent jurisdiction; *second*, that he gave a bond which was approved by the judge of probate, in case any bond was required by the court upon granting the license; *third*, that he took the oath prescribed by the statute; *fourth*, that he gave notice of the time and place of sale as prescribed by law; and, *fifth*, that the premises were sold accordingly at public auction, and are held by one who purchased them in good faith. The first four requisites are shown by the records and files from the probate court to have been complied with, and the jury are to determine whether the fifth requisite exists, viz.: whether the premises were sold by public auction, and are held by one who purchased them in good faith."

Again, the judge, in charging upon his own motion, tells the jury that "the first four requisites (required by the statute) are shown by the records and files of the probate court." There are other portions of the charge enlarging upon and enforcing the same views, both as to the compliance with the four statute requirements in question, and the conclusive effect of the estoppel from accepting the proceeds of sale.

The proceedings, in pursuance of which this sale purports to have been made, and the sale itself, were in 1860,

and must be tried upon the law as it then stood.   There were then (and still are) two separate, and, to some extent, independent provisions for the sale of the real estate of minors, by their guardians, according to the purpose for which the sale was made.   If the sale was (or now is) to be made for the payment of the debts of the ward, with the charges of managing his estate, when his personal property is not sufficient for these purposes, the proceedings are regulated by *chapter 77 of the Revised Statutes of 1846, Compiled Laws of 1857, ch. 101, §§ 38 to 55, inclusive.*   But if the sale was to be made for the maintenance and education of the ward, or for the purpose of investing the proceeds at interest, where it should appear for the interest of the ward to do so, the proceedings were (and still are, with some amendments) authorized and provided for only by *chapter 78 of the Revised Statutes of 1846, chapter 102 of Compiled Laws of 1857.*

Under both these statutes alike, the real ground of the application, and the purpose for which the sale is asked to be made, are required to be stated in the petition presented to the probate court, and the necessity or propriety of such sale is required to appear upon the petition itself, which is to be verified by the affidavit of the guardian; and under both, the condition of the estate of the ward must be set forth.   For these requirements under the first chapter referred to, see §§ *2, 3, 38, and 39*, and for the same requirements under the chapter secondly referred to, §§ *1 to 7*, inclusive.

The petition of the guardian in this case simply sets forth that he is the guardian of the minors, "that they are the owners of certain real estate," describing it, and concludes, "therefore your petitioner prays that he may be empowered and licensed to sell the real estate hereinbefore described,   *   *   *   according to the statute in such case made and provided."   And this is the entire petition, stating neither the condition of the estate, nor any ground

or reason for a sale, nor for what purpose the sale is asked, nor that there is any reason whatever for a sale.

It is this petition which gives to the probate court jurisdiction of the case, and the right to determine the question whether a license for the sale shall be granted; and, though many defects and imperfections in it would doubtless be cured under the statute, if all the five requisites enumerated by the statute are established, I am strongly inclined to think that such a petition, stating no ground or purpose for which the license to sell is asked, confers no more jurisdiction of the particular case, upon the probate court, under our statutes, than a piece of blank paper; and though it was the probate court for the proper county, and therefore the proper court to grant a license, after obtaining jurisdiction by a proper petition, and possibly for this reason within the meaning of the first indispensable prerequisite to a valid sale "a probate court of competent jurisdiction." Yet if any of the other three prerequisites, required by subdivision *2, 3, or 4 of the section (23)* is wanting, or not shown, this entire failure to acquire jurisdiction of the particular case by a proper petition, would, of itself, be fatal to the proceedings, at least when the question should arise directly for review in the same case. But this may be of slight consequence here, and we need express no opinion upon it.

Though the petition is silent, the order granting the license shows clearly enough that it was not understood to be a sale for the payment of debts, or expenses of managing the estate; and though it fails to show distinctly, as required by § *12, ch. 78, Rev. Stat. of 1846 (chap. 102 of Comp. L. of 1857)*, "whether the sale was to be made for the maintenance of the wards, or their children, or their education, or in order that the proceeds may be put out or invested," it inferentially shows that it was understood to be mainly for the latter purpose, as it expressly provides that "the interest may be used for the support and educa-

tion of the minors." And the defendant in the court below claimed, and the testimony of the guardian was, that the sale was made for the purpose of investing the proceeds for the benefit of the minors.

We are, then, to test the validity of the proceedings by the chapter last cited. By *section 13*, every guardian, licensed to sell real estate under this chapter, is absolutely required, before the sale, to give a bond to the judge of probate, with sufficient surety or sureties, to be approved by such judge, with condition to sell the same in the manner prescribed by law for the sale of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law. And as this law is equally imperative upon the guardian and the probate court, the judge must, within the meaning of the second subdivision of *section 23* (cited by the court below in his charge), be held to require it, whether he does so expressly or not. We so held (and that without the bond the guardian's sale was void) in *Stewart v. Bailey, 28 Mich., 251.* It is not claimed here here that any such bond was given, but that it was unnecessary. Again, by section 14 of this chapter as it stood at the time these proceedings were had (it has since been amended by *act of 1871,—Laws of 1871, p. 167*) the guardian was imperatively required " *before fixing on the time and place of sale,* to take and subscribe an oath, in substance like that required in the preceding chapter to be taken by an executor, administrator, or guardian who is licensed to sell real estate under the provisions of that chapter." It is not claimed or pretended that the oath was taken by the guardian " *before fixing on the time and place of sale,*" though one was taken long afterwards, and only a few days before the sale. This oath when taken was not, in my view, one either authorized or required by law, and is therefore extrajudicial; and as it does not afford the safeguard intended by the statute, it cannot, within the meaning of the third subdivision of the twenty-third section, be treated as " the oath prescribed in this

chapter." And the language of this section, I think, clearly implies that if the first four prerequisites of a valid sale (enumerated in the first, second, third, and fourth subdivision) shall not be made to appear, or, at least, when either is shown not to exist, the sale must be treated as void, though the premises are "held by one who purchased them in good faith." The court therefore erred in instructing the jury that "the first four requisites were shown by the records and files from the probate court to have been complied with." And this error was radical, and affected the whole case, as the verdict of the jury may have been based upon it, whatever view they may have taken of the other questions submitted.

The guardian's sale being thus entirely void, are the plaintiffs or any of them estopped in this action of ejectment from setting up their title and recovering the land, by the acceptance of the proceeds of the sale, after they became of age, with a full knowledge of all the facts? It may be doubtful whether the court intended to charge so broad a proposition, as he held that the four statute requisites had been shown, and submitted the fifth to the jury. But supposing the court to have intended to charge that plaintiffs would be so estopped, though the sale itself appeared to be utterly void, can this proposition be sustained?

Without going here into an examination or citation of the authorities, which are very numerous, we understand it to be generally well settled in those states and countries where the distinction between legal and equitable jurisdiction and remedies is kept up, that in an action of ejectment at law, the legal title, so far as relates to the right of possession, must prevail; and that the plaintiff cannot recover upon, nor a defendant set up in defense, a mere equitable, against the legal title.

If the reception by the plaintiffs of the proceeds of the sale, gave the purchaser any right whatever in the law, it was but an equitable right, and not a legal one, and one which could only be enforced, if at all, in a court of equity, where all the equitable circumstances could be inquired into,

but which have no relevancy to the legal title, which is alone to be determined in the action of ejectment. But it may well be doubted whether the reception of the money by the plaintiffs, under the circumstances supposed, amounts to what can be properly called an estoppel at all, even an equitable estoppel, as the purchaser at the sale was not thereby induced to make the purchase, or to pay the purchase money. This was paid to the guardian by the purchaser, and, of course, before it was paid over by the guardian to the plaintiffs. Nor is it shown that the purchaser did or omitted any act to his prejudice in consequence, or on the faith of it.

We think, therefore, the charge was erroneous upon this point.

Several other errors are assigned, but we do not think it necessary to notice them here, as they would not be likely to be presented in the same form upon another trial.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.