ELLEN R. VANDERBURG et. al. vs. CHARLES F. WILLIAMSON et al.

1. GUARDIAN'S BOND: *Power of the court.*
Where the probate court appointed B. guardian of a portion of the minor children of W., and who gave bond as required, the court had no power at a subsequent term to appoint him guardian of another of the said minors, without bond, and simply make an order that the bond executed on behalf of the other children should stand as a bond for the latter also. The court could not so convert the bond.

2. SAME: *Sale of real estate by a guardian. Code, 1857, arts. 150, 151, p. 463.*
Where a guardian is directed to sell lands, under the Code of 1857, arts. 150, 151, p. 463, the court may require an additional bond for the faithful application of the proceeds, and, when so required, if he fails to give the bond the sale will be void.

3. SAME: *Bill to remove cloud upon title. General relief. Surrender of possession.*

Where the only prayer in the bill is for cancellation of a deed alleged to be a cloud on complainant's title, and for general relief, the court, upon rendering a decree canceling the deed, cannot decree a delivery of the possession of the lands.

APPEAL from the Chancery Court of *Warren* County.

Hon. EDWIN HILL, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*M. Marshall,* for appellants.

*W. B. Pittman,* for appellees.

[The reporters find no assignment of errors on file, and therefore omit the points made by counsel in their briefs.]

CHALMERS, J., delivered the opinion of the court.

The bill was filed by Charles F. and Walter W. Williams, as two of the heirs of W. W. Williams, deceased, to recover an undivided half interest in certain lands in Warren county which had been improperly sold, as was alleged, under decree of the probate court, obtained by Bowie, the former guardian of complainants. The grounds for attacking the sale are three-fold:

1. That Bowie never, in point of fact, was the legal guardian of complainant Walter.

2. That he never executed a bond for the faithful application of the proceeds of sale, as required by the decree of sale.

3. That the sale was brought about by a collusion and fraudulent arrangement between himself and the husband of the purchaser, in liquidation of his private debts to the latter.

The two first grounds are sustained by the record, and the third rendered strongly probable by the proof. As to the first ground, it appears that Bowie first qualified as guardian of three of the Williams children, giving bond as such, and was at a subsequent term appointed guardian of Walter also. He gave no bond as guardian of Walter, the court simply making an

order that the bond executed on behalf of the other children should stand as a bond for Walter also.

It seems too clear for argument that the court had no power to convert the bond given on a former occasion into anything more than it purported to be on its face, and that, therefore, Bowie never became the guardian of Walter. The sale, consequently, as to Walter's interest, was utterly void.

2. The sale was made under arts. 150, 151, Code of 1857, p. 463. By said last-mentioned article it is provided that the court "may also require the guardian to give an additional bond and security, if necessary, faithfully to account for the proceeds of sale." In making the decree the probate court required Bowie to give a bond, under this section, in the sum of $2,500. He failed to do so, or at least, if he ever gave it the record does not show it, save by a recital in the decree of confirmation that he had complied with the requirements of the law and of the interlocutory decree, which we think insufficient. It is said that the clauses of the Code above quoted differ from the act of 1858, p. 187, which requires administrators to give special bonds, under which statute it has been held that a failure to execute the bond avoided the sale. The only difference is that in one case the court is compelled to exact the bond, and in the other the exaction is discretionary with the court. The reason for the difference is obvious. The administrator's original bond cannot be made to cover the proceeds of realty. The bond of the guardian, if sufficient, may do so. But if the court has, as in this case, ascertained the insufficiency of the guardian's original bond, and required him to give a special one to cover the proceeds of the realty directed to be sold, there is the same necessity for its execution as in the case of a sale by an administrator, and the same consequences must ensue from its non-execution.

3. As above remarked, the testimony seems to establish that the sale of the land was brought about by a fraudulent combination between the guardian and the husband of the purchaser, in order to pay a debt of $800 due by the former to the

latter, or that, if the proceedings were not originally instituted with this view, they eventuated in such an arrangement.

The wife, of course, would in such case be bound by the acts and knowledge of her husband, who acted as her agent.

The only prayer of the bill, save the prayer for general relief, was for a cancellation of the deed held by defendant, as a cloud upon complainant's title. The chancellor rendered ·decree to that effect, and also for the surrender of the premises. This latter was held to be error in Ezell *v.* Parker, 41 Miss., 520.

So much of the decree as directs a cancellation of the deed held by defendant is affirmed. So much of it as decrees a ·delivery of possession of the land is reversed.