RICHELSON, Appellant, v. MARIETTE et al. (MARIETTE, Respondent.)

(149 N. W. 553.)

**1.   New Trial—Motion for—Notice of Intention, Necessity for—Specifications.**

Errors predicated upon a motion for new trial cannot be considered on appeal, where there was no notice of intention to move for new trial, and where the notice of the motion stated that the motion would be made "upon the minutes of

the court," but contained no specifications which, under Sec. 303, Code Civ. Proc., should have been contained in notice of intention, and there being no specifications in settled record.

2. **Insane Persons—Guardian and Ward—Guardian's Sale of Realty, Under Court Order—Failure to Account for Proceeds—Estoppel to Attack Sale—Bond.**

Where the lands of an insane person were sold by his guardian, under an order of sale, but without any special sale bond being given, and the guardian wholly failed to account for proceeds of the sale, held, that, while the failure of the guardian to account for such proceeds does not itself render the sale void, yet the ward is not estopped from questioning its validity.

3. **Evidence—Burden of Proof—Facts Not in Stipulation, Presumptions as to.**

In an action to quiet title against a sale by guardian of an insane person, while the burden of proof rests upon the defendant to show affirmatively the facts essential to confer jurisdiction upon county court to order the sale, yet, held, that, where all the facts were stipulated, it will be presumed that proceedings not contained in the stipulation were lawful and regular.

4. **Insane Persons—Guardian's Sale of Property of—Necessity for Bond—Collateral Attack.**

Under Prob. Code, Sec. 403, concerning giving of bond by guardian, on sale of the ward's realty, before the sale, to account for proceeds thereof, the requirement of the bond is mandatory; and, while the order for the sale is not conditioned, as to its validity, upon the bond being given at time of making such order, an order confirming the sale, made without giving such bond, is void, and subject to collateral attack.

5. **Executors and Administrators—Sale of Realty—Order of Sale—Sufficiency of Bond—Judicial Determination—Collateral Attack.**

Under Prob. Code, Sec. 102, providing that, where decedent's realty is to be sold, county judge must require a special bond unless the general bond bears a certain prescribed relation, as to amount, to the value of the estate, held, that the determination by the judge as to whether the general bond is sufficient, is a judicial act, and is not open to collateral attack.

6. **Insane Persons—Procedure—Quieting Title—Sale Under Court Order—"Direct Attack."**

An action to quiet title by annulling a guardian's sale, brought by one who had been insane but had been restored to reason, against a remote grantee of a purchaser at a sale by

plaintiff's guardian, is a direct, and not a collateral, attack upon the order confirming the sale.

(Opinion filed November 30, 1914.)

Appeal from Circuit Court, Potter County. Hon. JOSEPH H. BOTTUM, Judge.

Action by Andrew Richelson against R. L. Mariette and another, to quiet title by annulling a guardian's sale of plaintiff's realty. From a judgment for defendant Mariette, and from an order denying a new trial, plaintiff appeals. Reversed, with directions to enter judgment for plaintiff.

*S. M. Howard,* for Appellant.

*Sutherland & Payne,* for Respondent.

(1) Under point one of the opinion, Respondent cited: Section 303, Code Civil Procedure, as amended by Chapter 173, Laws 1913; MacGregor v. Pierce, 17 S. D. 51, 95 N. W. 281; Moddie v. Breiland, 9 S. D. 506, 70 N. W. 637; Chapter 173, Laws 1913; Wenken v. Hall, 17 S. D. 305, 96 N. W. 103; French v. Ry. Co., 128 N. W. 498; Connor v. National Bank, 7 S. D. 439, 64 N. W. 519.

(3) Under point three of the opinion, Appellant cited: Elwood v. Northrop, 12 N. E. 590.

(4) Under point four of the opinion Appellant cited: Sections 203, 403, 402, 379, 380, Probate Code; Sec. 396, Probate Code; Ryder v. Flanders, 30 Mich. 336; Fitch v. Milke, 30 Cal. 35; Frazier v. Steenrod, 7 Iowa, 339; Schlee v. Darrow, 65 Mich. 362; Buzley v. Philips, 117 Fed. 105; McKeever v. Ball, 71 Ind. 398; Cornell v. Cornell, (Ky.) 115 S. W. 795; Dynes v. Hoover, 20 How. 65, 80; Williams v. Morton, 38 Me. 47; Williams v. Reed, 22 Mass. (5 Pick.) 480; Houlihan v. Fogarty, (Mich.) 127 N. W. 797; Stewart v. Bailey, 28 Mich. 250; Hubachek v. Maxbass Security Bank, 117 Minn. 173; Vandersburg v. Williamson, 52 Miss. 332; Bachelor v. Korb, (Neb.) 78 N. W. 485; Weld et al. v. Johnson Manufac. Co., 54 N. W. 335.

Respondent cited: Prob. Code, Secs. 102, 404, 427; Hughes v. Goodale, 26 Mont. 93; Blackman v. Mulhall, 19 S. D. 534; Bunce v. Bunce, 59 Iowa, 533.

SMITH, P. J.  Action to quiet title to a half section of land in Potter county. Defendant Clark made default. Trial to the court. Findings of fact and judgment for defendant Mariette.

Motion for and order denying a new trial. Plaintiff appeals.

[1] Respondent contends that errors predicated upon the motion for a new trial, cannot be considered on this appeal. Respondent is clearly right in this contention, under the decisions of this court in Traxinger v. Ry. Co., 23 S. D. 90, 120 N. W. 770, and Regan v. Whittaker, 14 S. D. 373, 85 N. W. 863.

There was no notice of intention to move for a new trial. The notice of motion for a new trial stated that such motion "will be made on the minutes of the court." Even the notice of motion did not contain the specifications which, under section 303, Code Civil Procedure, should have been contained in the notice of intention, where the motion is to be based upon the minutes of the court. Indeed there are no specifications found in the settled record. It follows that no assignments of error can be considered, except those based on the judgment roll, and upon those the only question before us is the sufficiency of the findings to support the judgment.

The findings of fact disclose that, during the year 1898, plaintiff was the owner in fee of a half section of land in Potter county; that during that year, while in the city of Chicago, he became insane, and on or about April 9, 1898, by order of the probate court of Cook county, Ill., was committed to the Northern Hospital for the Insane, at Elgin, Ill., where he remained until about the 1st of September, 1911, a period of over 13 years, when he was released, and is now sane; that prior to such confinement plaintiff was a resident of Potter county, and after his release returned to and again became a resident of said county; that during the latter part of 1898 one Frank E. Riley, a resident of Potter county, was, by the county court of that county, appointed guardian of his person and estate, qualified by giving bond and taking oath, and letters of guardianship were issued December 16, 1898; thereupon Riley, as guardian, took and retained possession of all the real and person estate of his ward. Some time in the latter part of the year 1899, Riley as guardian, filed in the county court, a petition for an order of sale of all of the land of his ward, and on January 31, 1900, the county court made an order authorizing a sale of the whole of said real estate; pursuant to said order the land was sold, on the 24th day of February 1900, to one Anna L. Boyle, for $1,055, and thereafter,

upon a return of such proceedings to the county court, an order was made confirming the sale, and a guardian's deed was executed; that Riley as such guardian did not, prior to the making of said sale, or at any time, subscribe a sale bond, as required by section 403 of the Probate Code; Anna L. Boyle, by quitclaim deed dated June 9, 1900, conveyed said land to one William S. Small, which deed was recorded July 8, 1902. Small conveyed to James O. Boyle, by quitclaim deed July 17, 1902, and September 12, 1904, Boyle conveyed by warranty deed to defendant Mariette; and on January 19, 1907, Mariette conveyed to defendant Clark by warranty deed 40 acres of the land in controversy.

Upon the record before us, the only irregularity which can be considered is the failure of the guardian to give the special sale bond provided for by section 403, Probate Code.

[2] The findings of fact disclose that the guardian wholly failed to account, either to the court or to the plaintiff, for the proceeds of the sale, and no part of such proceeds was ever received by plaintiff. Plaintiff, not having received the proceeds of the sale, is not estopped from questioning its validity. The failure of the guardian to account for the proceeds of the sale, however, does not of itself render the sale invalid. Respondent's contention is that the omission to give this bond was an irregularity which did not render the sale and conveyance void, and that appellant's only remedy is by appeal, or by direct attack upon the order and decree of the county court.

[3] Before considering this question, we deem it proper to notice appellant's contention that the burden of proof rests upon respondent to show affirmatively the facts essential to confer jurisdiction upon the county court to order a sale of the ward's property, and to sustain the order confirming the sale. This contention is very material to appellant's case, because appellant has not himself brought the proceedings of the county court into the record in any way. Prior to the trial in the lower court, a stipulation seems to have been entered into that:

"Each party may attach copies of such county court proceedings for the consideration of the court."

But the findings of fact fail to show the contents of the petition for sale, or of the order confirming the sale, nor does it

appear that any request was made for such findings. The proceedings in the county court, therefore, are not before us, except in so far as they are contained in the findings. Neither the stipulation of facts, nor the contents of the petition for the sale, or of the order of confirmation, has been brought before us by an order overruling a proper motion for new trial. It does, however, appear from the findings themselves that the findings are founded upon a stipulation of the facts. If it be conceded that the rule is as contended for by appellant, that originally the burden of proof was upon respondent, yet it is clear that where *all the facts are stipulated,* the rule has no application, and no facts outside of those stipulated can be deemed material to either party, under the issues. It must therefore be presumed that the contents of the probate records other than those contained in the findings, do not affect the legal rights of either party. The presumption then must be that such proceedings were in all respects lawful and regular. But the fact that the guardian failed to give the special bond required by section 403, Probate Code, is disclosed by the findings, and the question thus presented, is properly before us.

[4] The provisions of the Probate Code requiring bonds of guardians are different and entirely distinct from those requiring bonds by executors and administrators. These differences extend to the general bond required of executors and administrators, and of guardians, as well as those requiring special bonds, upon sales of real estate. Executors and administrators are required to give general bonds in an amount twice the value of the personal property and twice the probable value of the annual rents, profits, and issues of the real property belonging to the estate, which values must be ascertained by the county judge, by examining on oath the party applying, and any other persons. Probate Code, § 101. The general bond required of a guardian, is in *"such sum as the judge shall order."* Probate Code, § 373. When real estate belonging to the estate of a *decedent* is ordered to be sold the—

"judge must require an additional bond, * * * but no such additional bond must be required when it satisfactorily appears to the court that the penalty of the bond given * * * is equal to twice the value of the personal property remaining in, or that will come into the possession of the executor or administrator, in-

cluding the annual rents, profits and issues of real estate still belonging to the estate, and *twice the probable amount to be realized on the sale of the real estate* ordered to be sold." Probate Code, § 102.

But upon sales by the guardian the statute requires that:

"Every guardian authorized to sell real estate, must before the sale, give bond to the county judge, with sufficient surety, to be approved by him, with condition to sell the same in the manner and to account for the proceeds of the sale as provided for in this chapter," etc.

[5] No reference to the general bond (Prob. Code, § 403) is found, nor is the giving of this special bond conditioned upon the amount of the guardian's general bond, as in the case of executors and administrators. But plainly it was the legislative intent to authorize a county judge to dispense with a special bond upon sales by executors and administrators, whenever the general bond was sufficient—in addition to the general liability—to cover twice the value of the real estate to be sold. The determination of this fact is a judicial act, and may not be open to collateral attack. But the statute relating to guardian's sales contains no such provision—it begins and ends with the peremptory declaration that: "Every guardian authorized to sell real estate, *must before the sale, give bond,*" etc. It will be noted that neither of these statutes requires the giving of the special bond *before,* or as a condition to, the making of the order of sale; hence the failure to give the bond would not in itself invalidate the order of sale. The statute relating to sales by executors and administrators is not mandatory in all cases, but empowers the county judge to determine whether the heirs are sufficiently protected by the general bond, and to make an order requiring a special bond, where the general bond is found insufficient.

But neither section 403, nor any other statute, authorizes or requires the county judge to make such investigation, or any such order, in the case of guardian's sales. It does not provide that the bond may be dispensed with in any case. Its language is mandatory. Its plain purpose is to protect the ward against the wrongful acts of the guardian. The acts of the guardian are sometimes said to be the acts of the ward, and, if so, he is helpless against such acts, except as protected by a strict compliance

.with the statute requiring the bond. If the statute requiring a special bond, when ordered by ·the county judge, upon sales by executors and administrators, and the statute requiring a special bond upon sales by guardians in all cases, are mandatory, the exercise of the power given to the guardian or administrator ·by the order of sale is conditioned upon a compliance with the order or statute requiring the bond *before the sale*. The county court itself is without authority or jurisdiction, by an order confirming it, to validate a sale attempted to be made wihout the bond. While a sufficient petition and showing will confer jurisdiction on the court to *order* the sale, such order does not and cannot, in the face of the statute, authorize a sale without the · bond. It is held that where neither the petition for, nor the order of sale, discloses facts which authorize the court to make the order, the court is without jurisdiction, and the order of sale is void. Fitch v. Miller, 20 Cal. 353; Estate of Boland, 55 Cal. 310; Pryor v. Downey, 50 Cal. 388, 19 Am. Rep. 656; Probate Code, § 194. We think the same rule should apply to the order of confirmation, in the absence of the special bond. If the court may not authorize the guardian to ignore the statute requiring the bond, it cannot give the sale validity by a subsequent order confirming it. The rule that a void judgment or order may be attacked in a collateral proceeding is elementary, and requires no citation of authorities to sustain it.

[6] 'We do not concede, however, that this is a collateral attack. The very purpose of this action, as disclosed by the findings, conclusions, and judgment of the court is to annul the guardian's sale. This court held in Morse v. Pickler, 28 S. D. 612, 134 N. W. 809, that such an action is not a collateral but a direct attack. In this case, it is immaterial whether the order of sale be valid or invalid, if the sale and the order confirming it are void, and we so hold.

It is true that the Montana court, upon similar facts, and similar statutes, reaches a different conclusion in Hughes v. Goodale, 26 Mont. 93, 66 Pac. 702, 91 Am. St. Rep. 410, but we do not concur in the views there expressed. The intimation in that case that the statute may possibly be construed as not requiring the special bond in all cases, we think, is clearly wrong, as is shown by an examination and brief analysis of the statutes them-

selves. The gist of that case appears to be contained in the follow-
ing statement:

"If the omission to give a sale bond is sufficient to deprive
the court of jurisdiction, the judgment must be affirmed; in other
words, *if the order of sale* was invalidated by the omission to give
a special bond, then by the sale the plaintiff took no title as
against the minors. If, upon the other hand, the court was
clothed with jurisdiction *to make the order of sale,* and the omis-
sion to give the special bond did not deprive the order of its
legal force, then the plaintiff, by virtue of the confirmation of the
sale, followed by the deed of conveyance, acquiring all the title
which the minors had to the property. * * * In making the
order of sale its jurisdiction was duly exercised. As we have
said, the sale was not void unless the omission to give a special
bond rendered the order of sale ineffectual; that is to say, unless
the court lost jurisdiction of the subject-matter by the failure of
the guardian to execute a special sale bond, the plaintiff by the
sale acquired title to the lands. No mere irregularity, however
great, can avail the defendant or his wards, in such an attack as
is here made. Such defect or irregularity cannot be inquired
into by means of a collateral action."

As above suggested, the giving of a special bond is not one
of the steps leading up to and preceding the order of sale. The
jurisdiction of the court to make the order depends only upon the
sufficiency of the facts stated in the petition for the sale and
proved at the hearing. The court is absolutely without juris-
diction to authorize a sale of such real property, except in the
particular cases and for the particular purpose specified in the
statute. If the petition and the evidence at the hearing disclose
a case in which the statute authorizes a sale, then the court has
jurisdiction of the subject-matter, and has jurisdiction to make
the order. But the giving of the special bond is a subsequent
matter and has nothing to do with jurisdiction to make the order.

The mandate of the statute is directed to the guardian him-
self, after the order of sale has been made, and in effect says to
him:

"Before proceeding to execute the power conferred upon you
by the order of sale, you *must give a bond* which shall secure
your ward against your future wrongful acts."

The situation is precisely the same upon sales by executors and administrators, except that the statute says to them, in effect:

"If the county judge shall find that your general bond is sufficient to protect the heirs you are not required to give the special bond."

In the latter case, the legislative intent that reliance may be placed upon the *general bond* to safeguard the rights of heirs is plainly apparent, but no such intent is shown as to general bonds of guardians, even though the conditions of the general bond may be such as to sustain a recovery for misappropriation of the proceeds of sales. The amount of the guardian's general bond is not required to be fixed with referennce to the value of the ward's property, but is left discretionary with the county judge. The county judge is not given authority to waive or dispense with the special bond in any case. We think the authority of the guardian to proceed with the sale, under the order of the court, is conditioned upon his giving the required bond. The statute is mandatory and the county court has no more jurisdiction or authority to confirm a sale by a guardian made without the special bond that it has to order a sale in a case not authorized by the statute, or to confirm a sale made in the absence of a *general* bond. In this connection, the language of the court in Powers v. Lenoir, 22 Mont. 169, 56 Pac. 106, although used with reference to the failure of the guardian to give the general bond, is peculiarly appropriate, in view of the purpose of the statute requiring the special bond.

"A person who purchases the property of a minor, or who seeks to devest him of title to his property will not be heard to say that the minor is estopped and concluded by the irresponsible acts and doings of some person who has presumed to act as his guardian without first giving the minor the protection and security the law requires for him. * * * The latter [the ward] is, so to speak, the special favorite of the courts, and the courts will always see that his rights are protected."

In that case, it is held that the giving of the general bond by the guardian is indispensable to the validity of his acts, so far as the rights of the ward are concerned, that the great weight of authority sustains the view that such statutes are mandatory, and

that a failure to comply with them renders void all acts of the guardian, in so far as they conclude the rights of the ward. That court also quotes with approval the language of Judge Gilbert, in Hatch v. Ferguson, 68 Fed. 43, 15 C. C. A. 201, 33 L. R. A. 759:

"It is not the policy of the statute to extend to the purchaser at a guardian's sale the protection which in many instances is accorded to the innocent purchaser. The protection of the minor is deemed of the first importance. It is intended that the purchaser of the minor's property shall be placed upon inquiry to ascertain that the antecedent steps have been taken in accordance with the law. It is within the power of all to know whether the person who assumes to act as guardian is in fact clothed with the powers of that office. An inspection of the record in this case would have shown that Ferguson could not lawfully represent the Hatch heirs without first giving a bond, and that he had wholly failed to comply with the law in that regard. Notwithstanding the judgment of the probate court appointing the guardian, and the judgment of the superior court decreeing and confirming the sale, his acts are void, and may be so declared in any court having jurisdiction of the subject-matter and the parties to the suit."

See, also, Blake v. Blake, 260 Ill. 70, 102 N. E. 1007.

The same rule, we think should be applicable to the statute which requires the special bond. This view would also dispose of the question of collateral attack, on which some of the decisions seem to turn.

The statutes of Nebraska, Michigan, Wisconsin, and Indiana contain provisions which require that every guardian licensed to sell real estate shall, before the sale, give bond, with sufficient surety or sureties, to be approved by such judge with condition to sell the same in the manner prescribed by law, as does section 403 of our Probate Code. But the statutes of those states contain also a further section which provides that the guardian's sale shall not be avoided on account of any irregularity in the proceedings, provided it shall appear that the guardian has given the bond, where such bond was required by the court upon giving the license. In all of those states, it is held that a failure to give the bond invalidates the sale. Bachelor v. Korb, 58 Neb. 122, 78 N.

W. 485, 76 Am. St. Rep. 70; Stewart v. Bailey, 28 Mich. 251; Weld v. Johnson, 84 Wis. 537, 54 N. W. 335, 998; McKeever v. Ball, 71 Ind. 398. See, also, Vanderburg v. Williamson, 52 Miss. 233. In some of the decisions, the latter section is referred to, as an aid, in construing and holding the section requiring the special bond, to be mandatory and not merely directory. But aside from the negative section, the Supreme Court of Michigan finds ample grounds in the general intent to protect the helpless ward, for holding the statute which requires the special bond to be mandatory. That court says:

"But the whole chapter must be read and construed together in order to reach a safe conclusion, and when we come to examine it throughout, we find that in every instance where a sale is authorized, a sale bond is expressly and imperatively required; that the probate court is not permitted in any case to exercise discretion as to whether it should be given or might be dispensed with, and it is neither provided nor apparently contemplated that any order or decision of the court should be entered or made on the subject. The law appears to assume that the mandate that in every case a bond shall be given is entirely sufficient for the purpose, and that, being an imperative order of the Legislature to the court and to all suitors, it may be considered as tacitly speaking through the court, and as answering to a requirement of the court in all cases. The provision that a sale bond shall be given is one of great importance to the rights of wards and others having interests in their estates, and if it were to be rendered nugatory or even seriously weakened, the main ground of security for those who most need security would, in a great variety of cases, be destroyed. Estates belonging to orphan children and to others as helpless, as weak and defenseless as children would be liable to be dissipated and squandered without possibility of redress, or at least adequate redress, for the want of that specific security expressly and imperatively required by the law.

"It is admitted that the omission to give the bond would be sufficient to overturn the sale in a direct proceeding, and this, it is claimed, is a sufficient protection. But all who are conversant with such matters know that the very circumstances which give occasion for the guardianship very often, if not generally, make

any such remedy of little practical value as to shield to wards, and the records of our courts testify that as a means of self-protection the right of the ward to assail or resist the proceedings to sell property while such proceedings are in progress, and the right of review on appeal, are rights which the ward is generally unable to exert in any beneficial way. Turn the matter as we may, the propriety and policy of requiring such security is as obvious as the law is positive that it shall be given. Now may it be omitted and its omission still not operate as a defect in ejectment by the heir? If the necessity for giving it may, in all cases brought by the heir, be made to depend upon its being shown that the probate court superadded to the positive direction of the statute an express formal order or requirement to give it, the imperative command of the law will be changed, in its application to such cases, into a mere directory regulation, and the object and policy of the provision be essentially perverted. Against such a construction or a construction leading to such consequences, it is the duty of the court to struggle."

We have quoted thus extensively from this decision to show that it does not turn upon the negative section referred to, but broadly and fully recognizes and declares that the statute requiring the special bond is in itself mandatory, and as demonstrating that to hold otherwise would be, in effect, to wipe from the law books, the oft-repeated declaration that:

"The ward is, so to speak, a special favorite of the courts, and the courts will always see that his rights are protected."

The case at bar affords convincing proof of the necessity for such protection. The decisions which hold such statutes to be directory, or deny relief to the ward under the technical rule supposed to forbid collateral attack upon an admittedly improper order of the county court have written into the law a new version of the maxim quoted, and one which would protect purchasers at guardian's sales at the expense of the innocent and helpless ward, and free the purchaser from the duty of examining the records and proceedings of the county court.

As said by Justice Graves, in Stewart v. Bailey, supra,

"Against such a construction, or a construction leading to such consequences, it is the duty of the court to struggle."

It is conceded in this case that the special bond was never

filed, and as this defect is fatal to defendant's title, the judgment is reversed, and the cause remanded, with directions to the trial court to enter judgment for the plaintiff on the findings of fact already made.