Wales et al. *v.* Bogue.

---

# Horatio Wales *et al.*

## *v.*

## Virgil A. Bogue.

1. JUDGMENT—*in debt on penal bond—its form.* In a judgment in debt upon a penal bond, it was considered that the plaintiffs recover the sum of ten thousand dollars, their debt, being the penalty of the bond, and ordered that execution issue for a less sum which was assessed as damages by the jury. The judgment was regarded informal, and subject to be reversed on error.†

2. SAME—*if irregular, cannot be attacked collaterally.* But it was held not so irregular as to be void, and in a collateral proceeding, as in ejectment, where the party derived title under a sale on execution issued upon such a judgment, it was deemed sufficient.

3. PENAL BOND—*rights of obligee.* In an action of debt upon a penal bond, the plaintiff has no right to receive any part of the debt, but only the damages and costs, which will operate to satisfy the whole debt.

4. JUDGMENT LIEN—*upon after acquired property.* Real estate acquired by a judgment debtor after the rendition of the judgment, becomes subject to the statutory lien of the judgment.

---

* Rev. Stat. 1845, 413, sec. 6.

† See *Eggleston et al.* v. *Buck, ante,* 254.

5. DISCHARGE IN BANKRUPTCY—*its effect upon prior liens.* The discharge in bankruptcy of a judgment debtor, will not affect the judgment lien which had previously attached to the lands of the debtor.

6. EJECTMENT—*equitable title.* An equitable title forms no bar to a recovery in ejectment. In that action legal rights alone can be considered.

7. JUDGMENT LIEN—*as against rights of cestui que trust.* Where a party purchased land in his own name, but with the money and as the trustee of another, a conveyance by the trustee to the *cestui que trust* would pass the title, subject to the lien of a judgment obtained by a third person against the trustee while the title remained in him. And if the conveyance to the *cestui que trust* should be made after a sale on execution upon such judgment, no title whatever would pass thereby.

APPEAL from the Circuit Court of the county of Ogle; the Hon. JOHN V. EUSTACE, Judge, presiding.

Virgil A. Bogue instituted an action of ejectment in the Circuit Court, against Horatio Wales and Chester K. Williams, for the recovery of certain premises situated in Ogle county.

The plaintiff below, in establishing his chain of title, introduced in evidence a judgment against one Kellogg and some other persons. The question of the sufficiency of that judgment being presented, the form of it is given.

The judgment was in debt upon a penal bond, and after reciting the verdict of the jury, which found the debt to be ten thousand dollars, and assessed the damages at three hundred and eight dollars and fifty-five cents, proceeded thus: " Wherefore it is considered by the court that the said plaintiffs do recover of the said defendants the said sum of ten thousand dollars, their debt aforesaid : and it is ordered by the court, that the said plaintiffs have an execution against the said defendants for the sum of three hundred and eight dollars and fifty-five cents, their damages in form aforesaid assessed, together with their costs," etc.

All the other facts of the case necessary to an understanding of the questions decided, will be found in the opinion of the court.

The verdict and judgment below, were in favor of the plaintiff. The defendants prosecute this appeal.

Mr. Justice Walker delivered the opinion of the Court.

This was an action of ejectment, for the recovery of a part of the west half of the S. E. 17, 23 N., 8 E. Appellee, on the trial below, introduced in evidence a certificate of entry, by O. W. Kellogg. Also, a copy of a judgment in the Ogle Circuit Court, in favor of the People for the use of Henry Rhines, and against Kellogg and other defendants, rendered on the 27th day of March, 1841. From this copy it appears that the court rendered judgment for ten thousand dollars debt, and three hundred and eight dollars and fifty-five cents damages, and awarded execution only for the damages and costs. He next introduced an execution issued upon this judgment, dated on the 22d day of November, 1841, for the damages and costs. It was returned " no property found," on the 5th day of February, 1842. Next, a *pluries* execution, dated the 26th day of November, 1847, for the debt, damages and costs, indorsed to be satisfied upon the payment of the damages and costs.

The return on this latter execution shows a sale of the property in controversy, to Edward F. Dutcher, on the 25th day of February, 1848. Next, a deed from the sheriff to Dutcher, for the premises, dated the 3rd day of December, 1849. Also, a deed from Dutcher and wife, to Zenas Aplington, bearing date the 13th day of January, 1850; and lastly, a deed from Aplington to appellee.

Appellant, Williams, then offered to prove that he was in possession of the premises in the year 1840, and so continued until the sale by the sheriff. That he fenced and broke the same, and that his improvements were made before the land was entered by Kellogg. That other persons occupied other portions of the eighty acre tract of land, and that Kellogg was, by the occupants, appointed to enter it for their benefit, and to convey to them their respective portions. That each of the occupants furnished his proper proportion of the money necessary to enter the land of the government, and

that the said appellant furnished the money necessary to enter his part. Also, a deed from Kellogg to himself, which was not preserved in the record, nor is its date given. Also, a certificate of discharge of Kellogg as a bankrupt, in the District Court of the United States, which is not embodied in the bill of exceptions. But it is stated, that the certificate bears date in 1842. The court, however, rejected all of this evidence of the appellants, and the jury returned a verdict against them, on which a judgment was rendered.

The judgment read in evidence was, no doubt, informal, and might have been reversed on error. But it was not so irregular as to be absolutely void. It found the amount of the debt and damages. It declared that the plaintiffs should recover the damages and costs, and awarded execution. This was informal, but it declared the legal rights of the parties; as, under the law, plaintiffs had no right to receive any part of the debt. He was only permitted to receive the damages and costs, which would operate to satisfy the whole debt. Although erroneous, it was binding upon the parties until reversed.

The first execution was issued within a year from the date of the rendition of the judgment, and perpetuated the lien for the statutory period of seven years, on all of the real estate of the defendant within the jurisdiction of the court. And subsequently acquired property became subject to the lien and liable to levy and sale, under an execution on this judgment. Although the property in controversy was acquired after the judgment was rendered, it was levied upon and sold under a legal and binding execution, which was in all respects sufficient to pass the title to the purchaser.

Even if Kellogg did obtain the benefit of a discharge under the bankrupt act, it was after the lien of the judgment had attached; and the discharge did not affect the lien. The discharge may have passed the title to the premises to his assignee, subject to be defeated by a sale under execution on the judgment, but it could not operate to divest the lien. The eleventh section of the bankrupt law, fully recognizes the

binding force of such liens, and empowers the assignee to redeem the property from them, under the direction of the court. The third section of the act provides, that the bankrupt's property shall vest in the assignee, as fully as the same was vested in or might be exercised by the bankrupt at or before the time of his bankruptcy. From these provisions it is manifest, that the assignee took the property precisely as it was held by the bankrupt.

Had the evidence been received, that Kellogg only purchased this property as a trustee for appellant, Williams, it would only have established an equitable title in the latter. And there is no rule of practice better settled than that an equitable title forms no bar to a recovery in ejectment. In that trial legal rights alone can be considered. And the deed executed by Kellogg to Williams, only conveyed the grantor's title subject to liens, if it was made previous to the sale on execution, and if made after, then it passed no title of any description.

Appellee having exhibited a perfect chain of title from the general government to himself, was entitled to recover, unless it was rebutted by a better legal title, in the appellants, or outstanding in another person. If appellant, Williams, has any remedy on the state of facts which he proposed to prove, it is in a court of equity, where matters of trust are cognizable and protected.

The court below, therefore, committed no error in excluding appellant's evidence from the jury, as it could, at most, have established only an equitable title.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*