## THOMAS HALLORAN v. JOHN WHITCOMB.

*Estoppel.   Assignment of Chose in Action.   Evidence. Admission.*

The defendant having purchased a piece of land relying solely upon the representations of the plaintiff and his grantor, (who successively owned the adjoining lot pending the negotiation,) as to the location of the dividing line, with the knowledge of said parties as to his intended purchase, the doctrine of estoppel *in pais* applies as to such representations.

Where one in good faith and for a valuable consideration has assigned all his interest in a chose in action, the assignee may use the name of the assignor in a suit to enforce his right whenever that is necessary, and the assignor cannot control the suit, and his admissions made subsequent to the assignment and after notice will not be received to defeat it.

TRESPASS for breaking and entering lot numbered 140, in Bolton, and cutting and taking away timber, &c.   Pleas, the general issue, accord and satisfaction, and license.   Trial by jury, and verdict for defendant; April term, 1870, PIERPOINT, C. J., presiding.

The plaintiff's title to lot 140 was conceded; but it was claimed by the defendant, and he introduced testimony tending to show, that the place where the alleged trespasses were committed was not upon lot 140, but upon lot 141, belonging to the defendant,

and adjoining lot 140 on the west.   Where the true line between these two lots is actually located was the main question in the case.

Lot numbered 140 formerly belonged to one Davis, and was conveyed by him to the plaintiff on the first day of March, 1865.

The defendant's testimony tended to show that the first knowledge he had of lot 141 was by a proposal of one Carter to sell it to him at $5 per acre.   That after receiving this offer, the defendant went to Bolton and asked Davis, who then owned lot 140, to go with him to the land and point out the line between the lots, and that he told Davis that he thought of purchasing lot 141 and of the proposal of Carter.   That Davis went with the defendant and pointed out to him the line between the lots, being the line now claimed by the defendant.   That the defendant thereupon went to Carter and closed a contract with him for the lot, to be conveyed when the snow went off —the defendant, meanwhile, to have the right to go on and cut timber.   That he went on accordingly and cut a fortnight, when one Currier came and forbid him, claiming to own the lot, but offering to sell it to defendant for $5 per acre.   That defendant then quit cutting, and told Currier he would consider the offer and examine the title.

That after that, and in March, 1865, the plaintiff bought out Davis, took a deed from him, and went into possession of lot 140.

That in August, 1865, plaintiff came to defendant and wanted help to enable him to continue work upon 140, and to clear it, and that a contract was made between them, whereby defendant was to advance plaintiff money, provisions, &c., and· was to have the privilege of cutting timber and wood anywhere he pleased, and when he pleased, on 140, which plaintiff was to draw, and defendant to sell and apply the proceeds in payment for his advances.   That plaintiff then proposed to defendant to buy lot 141, to which defendant replied that he thought he had bought it once, and thought of buying it again, and asked him to show defendant the line between 140 and 141.   That plaintiff then went with defendant and pointed out the same line which Davis had previously pointed out, being the line now claimed by defendant, and that defendant thereupon went to Currier, closed the trade and took a

deed of the lot, dated Sept. 19th, 1865.   That immediately after said purchase, defendant and plaintiff obtained a surveyor and went and re-marked the line between said lots, as previously pointed out to the defendant as aforesaid.

That the defendant had no˙ knowledge or information concerning the line, except what he obtained from Davis and the plaintiff as above stated.   That he purchased of Carter relying upon the representation of Davis, and purchased of Currier relying upon the representations of Davis and of plaintiff, and believing them to be true, and should not otherwise have purchased ; and that if the line was where plaintiff now claims instead of where it was then so pointed out, it would make a very material difference in the value of the lot.

It was conceded that the trespasses complained of occurred on the territory between the two lines in dispute ; and that neither Davis, while he owned lot 140, nor the plaintiff, until the fall of 1866, and until after the alleged trespasses of the defendant had been committed, ever claimed or occupied ·to any other line than the one pointed out to defendant by Davis and the plaintiff as above stated.

The defendant's evidence further tended to show, that after purchasing of Currier, he went on in good faith and cut timber and wood on the disputed territory, with the full knowledge and acquiescence of the plaintiff, both parties understanding the land to belong to 141.

That during the same period he cut largely on lot 140, under his contract with the plaintiff as above stated, and made advances under said contract, to the plaintiff, to an amount largely exceeding the value of the wood and timber obtained by defendant.

The plaintiff's testimony tended to show that the true and actual westerly line of lot 140, and easterly line of lot 141, was about forty rods farther west than the line so pointed out to the defendant by Davis and the plaintiff.

The testimony on the part of the plaintiff tended further to show that in April, 1865, Davis, by the request of the defendant, obtained from Currier a written contract, wherein Currier stipulated and agreed to convey lot 141 to Davis, on payment of the sum

of $5 an acre : provided, that on examination of the title of the
lot, Currier should become satisfied that he owned it ; and that at
the time of the execution of said written contract by Currier,
Davis paid him the sum of fifty dollars, with money furnished by
the defendant for that purpose, in párt payment for said lot; and
that this contract, although nominally between Currier and Davis,
was really made for the benefit of the defendant, he having pro-
cured Davis to obtain the contract in his own name, because it
was supposed by the defendant that better terms of purchase
could be obtained in this way than by having it understood that
he, instead of Davis, was to be the purchaser.

It appeared, and as to this there was no dispute, that on the
21st of December, 1867, one Flannery purchased of the plaintiff
lot 140, and at the same time in good faith, and for an adequate
consideration, purchased of the plaintiff his claims against the de-
fendant, which are embraced in this suit, and took from the plain-
tiff a written assignment of all said claims ; and that Flannery
still continues to be the owner of this suit, and of all the claims
involved in it, and has since said assignment been, and still is,
prosecuting this suit for his own benefit.   And the testimony on
the part of the plaintiff tended to show that the defendant had
full notice of said sale and assignment on the 2d day of January,
1868, and at other times during that month.   But the defendant
testified that he was not distinctly notified of said sale and assign-
ment until the 20th of February, 1868, when he received a writ-
ten notice thereof.

On the 21st day of September, 1869, Flannery (between whom
and the plaintiff strong feelings of hostility have existed since the
winter of 1867–8,) procured the plaintiff's deposition to be taken
in this cause ; and due notice to produce said deposition on the
trial was given by the defendant to the plaintiff.

Against the objection of the plaintiff, and after the introduction
of said written assignment, and the above recited testimony re-
specting notice of the same to the defendant, the defendant was
permitted to testify, and did testify, that Halloran, on the oc-
casion of giving said deposition, stated that at the time the de-
fendant was talking of buying lot 141, Halloran, at defendant's

request, showed him the line claimed by defendant on trial to be the true one, and stated to the defendant that it was the true westerly boundary line of lot 140.

Another witness introduced by the defendant was allowed, against the plaintiff's objection, to testify in detail in reference to what Halloran stated relative to the matters in issue in this cause, at the time he gave said deposition.

The defendant, also, in this connection, offered in evidence a written statement signed (with his mark) by Halloran, made, as it appeared, about the 20th of September, 1869, in the absence of Flannery, which was explanatory of his agreement with defendant in respect to the timber on lot 140, and their talk about the disputed line, and stating that he had ordered this suit discontinued.

To the introduction of said statement the plaintiff objected, but the objection was overruled and the statement was received and read to the jury.

The defendant claimed, 1st, that the line as claimed by the defendant was the true line.    2d, even if not, that the plaintiff was estopped from denying it.    3d, that the license from the plaintiff to cut anywhere on 140 would be a bar to this action if the land in dispute belonged to 140.

The plaintiff requested the court to instruct the jury, that the acts and declarations of the plaintiff and of Davis above detailed, in relation to the dividing line between lots 140 and 141, even if the jury should find the facts to be as defendant's testimony tended to show, did not amount to an estoppel upon the plaintiff against alleging a different line as the true one ; and that in no event could the acts and statements of the plaintiff in respect to said line, done and made in August, 1865, operate as an estoppel upon the plaintiff, or those claiming under him, if the jury should find that such an arrangement had been previously entered into between Davis and Currier for the benefit of the defendant, as the plaintiff's testimony tended to show was made.

The court refused to so charge, and instructed the jury, among other things not excepted to, that if they should find that the defendant, having in contemplation the purchase of lot 141, applied to Davis, informed him that he (defendant) contemplated making

the purchase, and requested Davis to go and point out the westerly line of lot 140, and Davis went and pointed out the line, not merely by expressing his *opinion* as to its location, but by positively stating where it was located ; or if the defendant, before completing the purchase, applied to Halloran in a similar manner, and Halloran, knowing that plaintiff contemplated purchasing, pointed out the line as now claimed by defendant, and represented it to be the true line, and defendant made the purchase relying on such representations, and believing them to be true, and having no other information, and the defendant completed the purchase relying upon such representations of Davis or of Halloran, the plaintiff was estopped from denying that the line so pointed out by himself or by Davis was the true line between the lots.

That the mere expression of an opinion as to the line would not operate as an estoppel ; there must be a positive and unqualified representation, and these representations must have been relied upon by the defendant.   If not relied on, or if plaintiff acted upon other information, they would not operate as an estoppel.

The court submitted certain questions in writing to the jury to be answered in returning the verdict, which, with the answers of the jury thereto, are stated below.

To all which rulings of the court, to the refusal of the court to charge as requested, and to the charge as above detailed, the plaintiff excepted.

QUESTIONS SUBMITTED BY COURT TO JURY.

Was the land where the acts complained of were committed a part of lot number 140 ?

Not agreed.   A. Warner, foreman.

Did Davis and Halloran point out the west line of 140 as claimed by them to Whitcomb and tell him that the line they pointed out was the west line of 140, they at the time being the owners of said lot and knowing that Whitcomb then contemplated purchasing lot 141, which bounded 140 on the west, they knowing that Whitcomb was seeking to ascertain the line with a view to such purchase ; and did the said Whitcomb buy said lot 141 relying upon what Davis and Halloran or either of them told him as to the line, he having no other knowledge of the line ?

Yes.   A. Warner, foreman.

*E. R. Hard,* for the plaintiff.

*C. F. Clough* and *E. J. Phelps,* for the defendant.

The opinion of the court was delivered by

ROYCE, J.   The plaintiff's title to lot No. 140, on which the trespass complained of is alleged to have been committed, was conceded, and no question seems to have been made as to the defendant's title to lot No. 141.   The bill of exceptions states that the main question in the case was, where the true line between these lots was actually located.   But the case was tried and determined, as will be seen by the charge of the court and finding of the jury, upon the ground that Davis, the plaintiff's grantor, and the plaintiff, while in the ownership and occupation of lot No. 140, had by their acts and admissions estopped themselves from claiming any other line as a divisional line between said lots than the one claimed by the defendant.   The question of what constitutes an estoppel *in pais,* in cases analogous to this, has been so frequently and recently discussed and decided in this state that it can hardly be regarded as an open question.   In *Spiller* v. *Scribner,* 36 Vt., 245, the chief judge, in giving the opinion, used language substantially like that used by him in his charge in this case ; and in *Hicks et al.* v. *Cram et al.,* 17 Vt., 449, Judge REDFIELD says that "if one man has made a representation which he expects another may or will act upon, and the other does in fact act upon it, he is estopped to deny the truth of the representation."   This doctrine is founded upon the plainest principles of morality and justice, and its application is to prevent fraud and promote justice.   The same rule prevails in Connecticut: *Kinney* v. *Farnsworth,* 17 Conn., 355 ; *Whitaker* v. *Williams,* 20 Ib., 98. But the plaintiff claims that this principle is not applicable here, on account of the arrangement which the evidence shows was made between Davis and Currier for the benefit of the defendant in April, 1865.   The defendant did not acquire any title to lot 141 until September, 1865, and the evidence does not show that the arrangement with Currier was legally binding upon the parties to it, or that the defendant would have concluded the pur-

chase if it had not been for the subsequent declarations of the plaintiff in relation to the boundary line between the lots. But if there was any doubt upon this question, it is effectively removed by the charge of the court and the finding of the jury. The jury have found, as a matter of fact, that Davis and Halloran, while they were the owners of lot 140, pointed out the line that the defendant now claims to, as the west line of that lot, and that the defendant bought lot 141, relying upon what Davis and Halloran, or one of them, told him in relation to this line, he having no other knowledge of the line. We think the charge of the court was quite as favorable to the plaintiff as he had any legal or equitable right to demand.

The plaintiff excepted to the ruling of the court in admitting as evidence the admissions of the plaintiff of record. It appears that in December, 1867, the plaintiff sold lot 140 to one Flannery, and that at the same time Flannery, in good faith and for an adequate consideration, purchased of the plaintiff his claims against the defendant which are embraced in this suit; that he took a written assignment of said claims, continues to own them, and is prosecuting this suit for his own benefit; and that the defendant was notified of this sale and assignment as early as February, 1868. The defendant was permitted, subject to the objection of Flannery, to prove the admissions of the plaintiff made in 1869. The general principle deducible from the reported cases and elementary books is, that where one in good faith, and for a good consideration, has assigned all his interest in a chose in action, the assignee may use the name of the assignor in a suit to enforce his right, whenever that is necessary, and that the assignor cannot control the suit; and his admissions made subsequent to the assignment will not be received to defeat it. *Bullard* v. *Billings*, 2 Vt., 309; *Edgell* v. *Bennett & Lowell*, 7 Vt., 534; *Sargent* v. *Sargents*, 18 Vt., 371; *Hough* v. *Barton*, 20 Vt., 455; *Frear* v. *Evertson*, 20 Johns., 142; *Jackson* v. *Aldrich*, 15 Vt., 106; *Webb* v. *Steele*, 13 N. H., 230; *Vrooman* v. *King*, 36 N. Y., 477.

It has long been settled in this state that courts of law will protect the rights of the assignee to a chose in action after notice; and no effectual protection can be given unless the assignor can

40

be prevented from interfering with the chose assigned, to the prejudice of the assignee. It will be seen by a reference to the admissions which the defendant was permitted to prove, that they were made for the purpose of defeating the claims embraced in his sale and assignment to Flannery. And as we think the evidence was inadmissible for that purpose, the judgment for this reason is reversed, and the cause remanded.