## Martin Hayes v. Stillman Livingston.

*Estoppel in pais: Title to land: Statute of frauds.* The doctrine of èstoppel *in pais* is not as broadly applicable to cases involving the legal title to real estate as to those where only personalty is in question, the proviso of the statute of frauds, that interests in lands shall not be created or transferred otherwise than by deed, operating as a limitation upon the doctrine.

*Equity jurisprudence: Fraud: Release: Estoppel.* The remedy administered in equity, of compelling a release as for a fraud, is sustainable without the aid of the doctrine of estoppel, and these cases are therefore not in point upon the question under consideration.

*Boundary lines: Estoppel: Transfer of title.* The application of the doctrine of estoppel to voluntary adjustments of boundaries between contiguous estates, is not within the objection to its adoption in cases of transfers of title, since here the title is not supposed to be affected, but only the limit of the respective ownerships.

*Dedication of lands to public use: Statute of frauds: Estoppel.* Cases of the dedication of lands to public uses are not precedents for the application of the doctrine of estoppel in violation of the aforesaid proviso of the statute of frauds, for dedications are not within that statute.

*Equity jurisprudence: Fraud: Ejectment: Legal title: Estoppel in pais.* While it is a recognized ground of equitable relief to compel the owner of lands to surrender them up to one who by reliance upon such owner's fraudulent conduct has been misled into taking action which gives him a superior equity, yet at law the legal title must prevail, and under the statute of frauds it is not permissible that an estoppel resting in parol should work a transfer of the legal title to lands.

*Heard June 15. · Decided October 4.*

Error to Montcalm Circuit.

*William O. Webster,* for plaintiff in error, argued that the legal title to land cannot pass by parol under the provisions of our statute: *Comp. L. 1871, § 4692;* that in ejectment the legal title only, and the right of possession under it, is involved, and an equitable title, however clear and indisputable, will not support the action: *Tyler on Ejectment, 75; Adams on Ejectment, 32; 2 Greenl. on Ev., § 331; McPherson v. Walters, 16 Ala., 714; Hamlin v. Hamlin, 19 Me., 141; Delaplaine v. Hitchcock, 6 Hill, 14; Whitney v. Holmes, 15 Mass., 152; Ryder v. Flanders, 30 Mich., 336;* that the legal title cannot be parted with by mere waiver, or

transferred by an estoppel resting in parol: *Gugins v. Van Gorder*, 10 *Mich.*, 523; *Whiting v. Butler*, 29 *Mich.*, 122; *Smith v. Mundy*, 18 *Ala.*, 182; *Gimon v. Davis*, 36 *Ala.*, 589; *Jackson v. Demont*, 9 *Johns.*, 60; *Swick v. Sears*, 1 *Hill*, 18; *Mills v. Graves*, 38 *Ill.*, 455; *Wales v. Boyne*, 31 *Ill.*, 464; *Blake v. Fosh*, 44 *Ill.*, 302; *Hurd v. Cushing*, 7 *Pick.*, 176; *Heard v. Hall*, 16 *Pick.*, 457; *Hale v. Skinner*, 117 *Mass.*

*Mitchel & Pratt*, for defendant in error, conceding that where, as in this state, the distinction between legal and equitable jurisdiction is kept up, the legal title, so far as relates to the right of possession, must prevail, argued that a plaintiff in ejectment makes out a case when he shows title or right of possession, or any state of facts which estops the defendant from denying his title or right of possession: *Gugins v. Van Gorder*, 10 *Mich.*, 523; *Clee v. Seaman*, 21 *Mich.*, 287; that equity will not permit the statute of frauds to be used as a means of promoting the fraud it was designed to prevent, and that the doctrine of equitable estoppel should be adopted in legal tribunals and applied as broadly as in courts of equity: 2 *Smith L. C.*, 651; *Rangeley v. Spring*, 21 *Me.*, 137; that an award upon a parol submission to arbitration of disputed titles, has been held to operate by way of estoppel to preclude either party from asserting title in opposition to the award: *Robertson v. McNeil*, 12 *Wend.*, 378; *Clark v. Whithers*, 19 *Wend.*, 320; *Cary v. Wilcocks*, 6 *N. H.*, 177; *Doe dem. v. Rasser*, 3 *East*, 15; *Bigelow on Est.*, 607; that examples are abundant where in cases of dedications the owner has been held estopped by acts *in pais* from asserting his title to land; and see *Cleland v. Taylor*, 3 *Mich.*, 301; and upon the main proposition, the following authorities are cited: *Bigelow on Est.*, 606–7; *Hatch v. Kimball*, 16 *Me.*, 146; *Morse v. Child*, 6 *N. H.*, 521; *Thomson v. San-*

born, 11 N. H., 201; Shaw v. Beebe, 35 Vt., 203; Halloran v. Whitcomb, 43 Vt., 306; Brown v. Wheeler, 17 Conn., 345; Johnson v. Conn. Bk., 21 Conn., 21; Sayles v. Smith, 12 Wend., 57; Presbyterian, etc., v. Williams, 9 Wend., 147; Cockerill v. Landers, 44 Barb., 218; Medley v. Williams, 7 Gill & J., 61; 6 Harris, 343; Clark v. Driggs, 6 Ired., 159; Duncan v. Duncan, 3 Ired., 317; Pool v. Lewis, 41 Ga., 162; Burkhalter v. Edwards, 16 Ga., 593; Thompson v. Wheatly, 8 S. & M., 499; Winnie v. Cole, 1 Miss., 119; Doe v. Pritchard, 11 S. & M., 327; Leland v. Wilson, 34 Tex., 39; Cornelius v. Burford, 28 Id., 202; Morrison v. Keeler, 13 L. A., 543; Davison v. Sillman, 24 L. A., 225; Spear v. Walker, 1 Head, 166; Merriweather v. Larmor, 3 Sneed, 447; McAfferty v. Conover, 7 O. St., 99; Shaw v. Potter, 50 Mo., 278; Fair v. Howard, 6 Nev., 304; Davis v. Davis, 26 Cal., 23.

COOLEY, CH. J:

In the court below Livingston recovered a judgment in ejectment on the strength of an estoppel *in pais*. His case was, that Hayes, whose title to the land at a former time was conceded, had given two mortgages upon it, one of which had been foreclosed under the power of sale, and the land sold to a third party; that the other being held by one Corey, an arrangement was made between him and Hayes, under which Corey was to buy up the title under the foreclosure, and then when he should be able to find a purchaser, sell the land and from the proceeds take out the amount of his mortgage and the amount he should have paid for the foreclosure title, and pay over the remainder to Hayes; that this arrangement was carried out so far as concerned the purchase of the foreclosure title, and that subsequently Corey sold to Livingston, being first told to do so by Hayes, and Livingston not making the purchase until

assured by Hayes that the land was Corey's, though the latter was to pay over to Hayes a surplus from the purchase price when the sale was made. This case was disputed by Hayes, who claimed that whatever was paid by Corey in acquiring the foreclosure title was only a loan to be repaid with interest. The dispute as to these facts would not have been important in the ejectment suit had the foreclosure title proved to be valid, but it was claimed on one side, and conceded on the other, that it was defective, and left the legal title in Hayes. But Livingston insisted that Hayes, by his arrangement with Corey, and by telling Livingston, after Corey bought, that the latter was owner, had estopped himself from setting up any title in opposition to that which Livingston had acquired in reliance upon his own statement; and the circuit judge so instructed the jury. The jury having found the facts to be as claimed by Livingston, a verdict and judgment in his favor followed as of course.

If the rule of estoppel *in pais* is the same when the right to real property is involved as it is when only personalty is in question, the circuit judge was undoubtedly right in his instruction. The principle is so old that it has ceased to be brought into controversy, that when one has knowledge that his own chattels are being sold as the property of another, and encourages the sale without asserting his right, or even by his silence allows a purchase to be made in ignorance of his title, he shall not thereafter be permitted to assert such title to the prejudice of the purchaser. The rule is as sound in morals as it is indisputable in point of law; and has often been recognized in this court.—*Dann v. Cudney, 13 Mich., 239; Truesdail v. Ward, 24 Mich., 117; Meister v. Birney, 24 Mich., 435.*

But a difficulty arises when it is proposed to apply the same principle to real estate. The statute of frauds is express that no interests in lands, with certain exceptions which are unimportant here, shall be created or transferred otherwise than by deed; and although it is perfectly true, as is shown by Mr. Bigelow in his treatise on the law of estop-

pel *(p. 606)*, that where one by his conduct is precluded in law from asserting his title in property, there is strictly no transmission of title, yet this is a mere technicality; the legal consequences are precisely the same, and for all practical purposes the estoppel works a conveyance.   It would hardly be creditable to the administration of the law if the application of a statute so important as the statute of frauds should · be turned away and defeated by a technicality so shadowy and unsubstantial.

It is not to be denied, however, that there are several cases which apply the doctrine of estoppel indiscriminately to both real and personal estate.   The cases in Maine are very decided.—*Hatch v. Kimball, 16 Me., 146; Durham v. Alden, 20 Me., 228; Rangeley v. Spring, 21 Me., 137; Copeland v. Copeland, 28 Me., 525; Stevens v. McNamara, 36 Me., 176; Bigelow v. Foss, 59 Me., 162.*   These cases appear to have overruled *Hamlin v. Hamlin, 19 Me., 141.*   The following are usually referred to as supporting the Maine cases: *McCune v. McMichael, 29 Geo., 312; Beaupland v. McKeen, 28 Penn. St., 124; Shaw v. Beebe, 35 Vt., 205; Brown v. Wheeler, 17 Conn., 345; Brown v. Bowen, 30 N. Y., 519; Barham v. Turbeville, 1 Swan, 437.*   Of these the Georgia case related to a parol partition of slaves acquiesced in until after the death of one of the· parties, and was decided without any discussion of or reference to the distinctions between real and personal estate. The case in Pennsylvania was a suit on a promissory note given on a purchase of lands, the payment of which was resisted on the ground of failure of title.   The persons in whom the title was alleged to be had been the plaintiff's agents in the sale, and had been paid a commission for making it; and they were held to be estopped from denying the plaintiff's right.   It is to be observed of this case that the title was only incidentally in question, and also that in Pennsylvania the distinction between legal and equitable remedies is not kept up.   In the Vermont case the court is contented to dispose of the question very briefly by saying

that the rule of estoppel which is applied to personal property "upon reason and principle, to prevent fraud and promote justice, should be extended to real property." It would have been more satisfactory if the court had pointed out on what grounds, when the legislature, "to prevent frauds and promote justice," had applied wholly different rules to the transfer of personal property and of real property, the courts could justify their action in venturing to abolish the distinction. The Connecticut case was one in which the question of estoppel related to a distribution of property which, though not in pursuance of the statute, had been sanctioned by a written agreement of the parties. In the New York case the complaint was of the flooding of the plaintiff's mill by a dam which set the water back upon it; and the question was, whether the defendants were estopped from asserting title to the land on which the mill stood, by the fact that their ancestor through whom they claimed had asserted no right at the time the plaintiffs bought the land and built the mill, though aware of all the facts. The case was begun and tried under the code, which does away with the distinction between legal and equitable actions. The case in Swan goes to the extreme of sustaining an estoppel against an infant, and certainly would not be followed in this state.—*Ryder v. Flanders, 30 Mich., 336.*

Some other cases may be mentioned which we think are distinguishable, though in some of them a doctrine is asserted as broad as that which is maintained by the cases in Maine. *Blackwood v. Jones, 4 Jones Eq., 56,* was a case where one by his conduct was held estopped from asserting a lien upon lands. Besides being in equity, it may be said of the case that what was in dispute was not the title, but something supposed to encumber it. *Water's Appeal (35 Penn. St., 523)* was where the estoppel related to a claim to surplus moneys on a sale of lands. *Stevens v. Dennett, 51 N. H., 324,* was one where the doctrine was applied to the use of a well on the land of another, to which the party claimed right by user. *Winchell v. Edwards, 57 Ill., 41,*

was a case in which it was held that one was precluded
from asserting a secret equitable title as against the legal
title, and is obviously not in point. *Pool v. Lewis, 41
Geo., 162,* was one in which the estoppel concerned the
right to rely upon a verbal agreement concerning the flow
of water in a natural water-course, and like the last, has no
application. *Mariner v. Milwaukee, etc., R. R. Co., 26
Wis., 84,* was a case of election between taking lands and
taking moneys. *Platt v. Squire, 12 Met., 494,* was one
where the question was as to the actual payment of a mort-
gage. *Gill v. Denton, 71 N. C., 341,* was where an offi-
cer who had induced a person to buy lands by representing
them to be free from liens, was held estopped from after-
wards claiming the lands on a purchase under an execution
which was held by him when the representations were made.
Manifestly neither this case nor that in Metcalf involves the
question we are now considering.

The following were either cases in equity or cases in
which, under permission of the statute, an equitable defense
was relied upon: *Wendell v. Van Rensselaer, 1 Johns. Ch.,
344; Storrs v. Barker, 6 Johns. Ch., 166; Tilton v. Nel-
son, 27 Barb., 595; Barnes v. McKay, 7 Ind., 301;
Snodgrass v. Ricketts, 13 Cal., 359; Fay v. Valentine, 12
Pick., 40; Foster v. Bigelow, 24 Iowa, 379; Junction
R. R. Co. v. Harpold, 19 Ind., 350; Burns v. Taylor, 23
Ala., 255; Newsome v. Collins, 43 Ala., 656.* These
cases have no necessary bearing, and their correctness may
be conceded. Equity may always compel the owner of the
title to release it where that is the proper redress for a fraud
committed by him in respect to the title; but the remedy
is properly administered by compelling the fraudulent owner
to convey, instead of treating the case as one of estoppel in
the strict sense.

The following were cases in which the doctrine of estoppel
was applied to a voluntary adjustment of boundaries between
contiguous estates: *Robinson v. Justice, 2 Penn., 19; Spiller
v. Scribner, 36 Vt., 245; Halloran v. Whitcomb, 43 Vt.,*

*306; Merriwether v. Larmon, 3 Sneed, 447; Spears v. Walker. 1 Head, 166; McAfferty v. Conover, 7 Ohio N. S., 99; Gove v. White, 23 Wis., 282.* The principle of these cases has been approved in this state.—*Reed v. Drake, 29 Mich., 222; Stewart v. Carleton, 31 Mich., 270.* It is not supposed that in such cases the title is affected. The parties have only by their agreement and conduct determined the limits of their respective ownerships. Cases like that of *Noyes v. Ward, 19 Conn., 250,* which was one of the dedication of lands to public uses, have no application, because dedications are not within the statute of frauds. They would not be referred to at all but for the fact that they are sometimes spoken of as cases of estoppel. *Gugins v. Van Gorder, 10 Mich., 523,* on which some reliance is placed in this case, is not at all in point. In that case the grantee in an unrecorded deed had consented to its destruction, and to the conveyance of the land described therein to a third party, who, by recording his deed, became the apparent owner of a record title, as he was unquestionably the owner in equity. Afterwards a title was asserted under the destroyed deed, and the question was of the right to introduce parol evidence of its existence and destruction. Justice Manning, after pointing out that the case was within the statute of frauds, and that the destruction of the deed did not affect the title, proceeded to say: "Secondary evidence cannot be received to prove a fact without first laying a foundation for it in accounting for the absence of that which is primary. The deed to Goodrich is the best evidence of title. This is not produced, and its destruction is accounted for in a way that shows it would be dishonest in him to claim any thing under it. It was destroyed in pursuance of an agreement between him and his grantors, after the purchase money had been returned to him, with a view of revesting the title. It was done with his consent and for a valuable consideration. The law will not recognize such a state of facts as an excuse for the non-production of the deed. Its language to Goodrich would be, if he was

defending, 'Sir, you are estopped by your own acts from proving the contents of the deed by parol evidence;' and the defendant who claims through him has no greater rights than he." It thus appears that the only question in the case was one of primary and secondary evidence. Had the deed, when the transaction took place, been laid aside instead of being destroyed, and subsequently been brought forward and relied upon, the case would have been wholly different, and nothing said by Justice Manning would have had application. In such a case the right of property would have been involved; in the case actually considered it was only the quality of the evidence to establish the right.

The following cases have more or less bearing on the question involved in this suit. In *Jackson v. Shearman, 6 Johns., 19, 21,* it is said by the court that parol acknowledgments as to the title to real property "are generally a dangerous species of evidence; and though good to support a tenancy, or to satisfy doubts in cases of possession, they ought not to be received as evidence of title. This would be to counteract the beneficial purposes of the statute of frauds." In *Jackson v. Vosburgh, 7 Johns., 186,* parol evidence of a disclaimer of title was rejected on the same ground. In *Wright v. DeGroff, 14 Mich., 164,* it was decided by this court that an estoppel could not be made out against a widow's claim to dower, by showing that she, as administratrix of her husband's estate, had sold the land and agreed to assert no claim on her own behalf. In *Parker v. Barker, 2 Met., 423,* a parol promise to release a mortgage interest in lands was held inoperative, although acted upon; the case corresponding in principle with the one last cited. The point here involved was directly passed upon in *Swick v. Sears, 1 Hill, 17, 19.* There, in reviewing a trial in ejectment, *Bronson, J.,* says: "Evidence was offered to show that the plaintiff stood by and not only saw the defendant buy of others, but advised him to do so, without disclosing the title which he now sets up. The evidence was properly rejected. The plaintiff is not estopped in a

court of law to assert his title." "If the defendant finds
it necessary to rely upon this part of the case, he must go
into a court of equity." This case is not referred to in the
subsequent case of *Brown v. Bowen, 30 N. Y., 509,* and
it is to be presumed that the last case was supposed to be
distinguishable. In *Davis v. Davis, 26 Cal., 23,* while it
was not decided that the doctrine of estoppel was inapplica-
ble where the title to real estate was in question, the dan-
ger of applying it to the overthrow of the statute of frauds
was very distinctly pointed out. The question is distinctly
met in *Doe v. Walters, 16 Ala., 714,* in which it is said
by *Dargan, Ch. J.,* delivering the opinion of the court, that
"the title to land can pass only by deed, and an estop-
pel at law, which works a divesture of title, can be created,
in my opinion, only by as high evidence. I have looked
with some care into the English cases, but I have not found
one in which a plaintiff at law was held to be bound by a
parol estoppel, when the subject matter was such that the
title could pass only by deed. If the title could pass by
delivery, or by parol, then a party shall be bound by a parol
estoppel;" and the learned judge quotes, among other cases,
that of *Knight v. Wall, 2 Dev. & Bat.,* as deciding that
"title to slaves could not be made out at law by a parol
estoppel; and if fraud had been practiced on the party, he
must seek his redress in equity." To this effect also, *West
v. Tilghman, 9 Ired., 163,* may be referred to. And as
to the doctrine in Alabama, further reference may be made
to *Smith v. Mundy, 18 Ala., 182.* The decisions in Il-
linois are equally clear and pointed. In *Mills v. Graves, 38
Ill., 455, 466,* where the precise question was involved,
*Walker, Ch. J.,* says: "Had the acts which were proved
constituted an estoppel, it would have been simply an equita-
ble right, incapable of assertion in a court of law.—*Wales
v. Boyne, 31 Ill., 464.* There can be no pretense that
mere oral declaration can ever transfer the legal title; and
equitable titles and demands are not cognizable in a court
of law. Even if this were such an estoppel as the defend-

34 MICH.—50.

ant claims, the legal title is in Ellis' heirs or grantees. After a careful examination of the adjudged cases, we are unable to find that such estoppels can be made available in a court of law. Estoppels relating to real estate, so far as we can find, have been uniformly enforced in courts of equity, and usually by injunction; and this is manifestly in accordance with the analogies of the law." In *Blake v. Fash, 44 Ill., 302,* this doctrine is reaffirmed by Mr. Justice Breese, speaking for the court. It also had the approval of this court in *Ryder v. Flanders, 30 Mich., 336, 344,* where it was distinctly denied in an opinion by Mr. Justice Christiancy that an equitable estoppel can constitute a defense at law.

Upon this statement of the cases it is apparent that while there are authorities both ways, it cannot be said that the weight of authority is with the ruling below, unless the cases of settlement of boundary lines and those of dedication are in point. The first have not usually been disposed of on that ground, but, on the contrary, such settlements, when acquiesced in, are supported for the very reason that they pass no title, but only define what it is that the title embraces. And surely cases of dedication are foreign to this question. A dedication is in one sense a conveyance, but it is neither within the mischiefs the statute of frauds was aimed at, nor does the statute come in question in making it out. It is a gift publicly made with tender of possession, and publicly accepted; and is as free from a likelihood of being affected by frauds and perjuries as almost any supposable case; and it is as well made out by oral declarations as by any formal conveyance. But a grant to an individual is not suffered to be thus made; if it were it would be needless to invoke the doctrine of estoppel in support of an oral transfer. Indeed, in those cases of dedication in which estoppel is discussed, it is not strictly estoppel that is in question, but rather the right of the party to recall his gift. To treat such a question as one of estoppel, is a careless use of terms. But conceding the doctrine of estoppel to apply

in cases of dedication, the question here at issue is still untouched; for here the question is, how we are to get over or evade the statute of frauds, which in cases of dedication is not involved.

The suggestion that the application of the estoppel only prevents circuity of action, is one which overlooks the distinction between legal and equitable remedies. It may be plausibly urged that no such distinctions should be kept up; but they are kept up, and until recently in this state,—as is still the case in some others,—the practice in equity has permitted some evidence to be reached which was not available at law. This is no longer the case in this state; but there is nothing in our legislation which permits cases where one claims that equitably the title or the possession of lands should be awarded to him because of the fraud of the legal owner, to be tried as common-law cases by jury. Perhaps one reason for this may be that jurors are not likely to understand and appreciate the importance of an adherence to the statute of frauds so well as those who have been educated in a knowledge of the reasons which led to its enactment; and a jury might therefore be overready to set aside titles on parol evidence of mere words or mere failure to utter words. But whatever may be the reasons, and whether satisfactory to ourselves or not, we are not at liberty to disregard the fact that the legislation of the state still leaves equitable claims to be tried in the courts of equity. And when one asserts that the owner of land ought to surrender it to him, because of the owner's fraudulent acts and conduct, it is manifest that his claim is only an equitable claim, set up and asserted against the legal claim. The one has the legal title, and the other seeks to overthrow it by proving a superior equity. This he may be able to do in a court of equity, but we cannot admit that at law the legal title is not entitled to prevail.

Those cases in which it has been decided that a deed given by one assuming, but without authority, to be agent

for the nominal grantor cannot be ratified by parol, are not without a bearing in this connection.—*Despatch Line of Packets v. Bellamy Manf. Co.*, *12 N. H., 205, 231; Blood v. Goodrich, 9 Wend., 68; Hunter v. Parker, 7 M. & W., 322, 343.* The parol ratification, especially if accompanied by an acceptance of the purchase price, is certainly sufficient to make out a case of strong equity, if that were all that was needful to the estoppel.

But apart from all authority, the reasons against such an application of the doctrine of estoppel appear to us entirely conclusive. Our title deeds are supposed to be the best possible protection to estates, and the policy of the law makes them so. They prove themselves, and the record of them is notice upon which every one may rely in bargaining for and in acquiring lands. The law does not permit the title to rest in parol, nor does it allow any thing which is evidenced by the deeds to be changed on parol testimony of promises, agreements or understandings. But by this doctrine, while the instruments of title are conceded to be indisputable, they are allowed to be set aside on parol evidence of the owner's admissions or statements, though this species of evidence is confessedly the least reliable of all which the law admits. The best evidence of title is thus allowed to be overcome and set aside by the weakest. A conversation misunderstood or falsely reported controls the most perfect chain of conveyances, and any estate—the most valuable in the land equally with the most worthless—is liable to be taken from the owner on the impression which a jury receives of the preponderance of evidence concerning words which witnesses may have imperfectly heard, or incorrectly understood, or the purport of which they may have unintentionally colored, or purposely wrenched from the real meaning in the mind of the speaker. The evils against which the statute of frauds was aimed are all here in their most threatening form; and it seems to us a trifling with the statute to refuse to apply it to a case clearly within its spirit, when in order to exclude

it from the letter it is necessary to put the title out of view and deny that it is involved, though the decision is effectually to dispose of it.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.