CLEVELAND-CLIFFS IRON CO. *v.* GAUTHIER.[1]

1. BOUNDARIES—FENCES—ESTOPPEL.

The owners of adjoining tracts of land sold them to complainant, knowing of his purpose to develop them as a single mine, and conveyed by metes and bounds according to a fence between them. Subsequently the vendors discovered by survey that the fence was not upon the true line, but made no claim to the omitted strip until after complainant had expended large sums upon the strip in developing his mine. The vendor, in possession of the strip up to the time of the conveyance, disclaimed ownership of it. *Held,* that the vendor, in whom the record title reposed, was estopped to deny that the fence marked the true boundary between the parcels.

2. SAME.

Though it is true, as a general proposition, that title to land cannot be established by estoppel in this State, the location of a boundary line, not being supposed to affect title, may be so established.

Appeal from Marquette; Stone, J. Submitted November 15, 1905. (Docket No. 135.) Decided March 5, 1906.

Bill by the Cleveland-Cliffs Iron Company and George J. Maas against Maria P. Gauthier and others to quiet title to land. From a decree for complainants, defendants Gauthier appeal. Affirmed.

*William P. Belden* and *Young & Bell* (*Hoyt, Dustin & Kelly,* of counsel), for complainants.

*Ball & Ball,* for appellants.

MONTGOMERY, J. This is a bill to reform deeds and to quiet title. Prior to March 1, 1901, the defendants designated in the record as the Gauthier heirs owned a tract

[1] Rehearing denied June 4, 1906.

of land of about 30 acres in Negaunee township, Marquette county. The defendants designated as the Barabe heirs owned about 54 acres next adjoining on the west. Complainant Maas had before this date been in negotiation for both tracts, as well as for land lying on either side, with a view to opening up an iron mine. To this end he secured options from both the Gauthiers and the Barabes, all of whom well understood his purpose to develop a single mine. In pursuance to this option the parties deeded their respective properties by metes and bounds. Complainant Maas sold an interest to the co-complainant, and development and operation continued. At the time of these conveyances the Gauthiers, as well as the Barabes, understood that the descriptions employed in their respective deeds covered all the property owned by the respective sets of heirs. It also appears that a fence had existed for many years,—by the best testimony more than 40,—on a line which limited the holding of the Gauthier heirs to the 30 acres actually conveyed. By the death of Gauthier and the appointment of Barabe as his executor and guardian of the minor Gauthier heirs the running of the statute of limitations was interrupted. In the month of April, 1902, one Cummings, a surveyor, surveyed this land and discovered that there was a gore-shaped strip between the lands conveyed by the Gauthiers and the Barabes, 100 feet at the larger end. Complainants had on purchase entered into possession and were at the time engaged in putting down a shaft, which it happens was on this disputed strip. The Gauthiers gave no formal notice of their discovery until October, 1903. Some notice of the claim was, however, given to one Bell, the local attorney for the mining company, and to Maas, during the summer of 1902. The circuit judge granted the relief prayed, and the defendants the Gauthier heirs appeal.

As the Barabe heirs are parties, and as it is not only proved, but conceded on their behalf, that it was the intention to convey all land occupied by them, and as the fact was known to the Gauthier heirs, and as it was also

known to them that the complainant intended to develop the two properties as one mine, and purchased the two tracts for that distinct purpose, it would seem that all the elements of an equitable estoppel are present, unless the defendants Gauthier can escape the consequences of their assent to this purchase on the ground that they were at the time ignorant of their ownership of the wedge-shaped strip. The fact that there had been occupancy up to the fence on either side for this long period, while strongly tending to show such an establishment of this fence as the boundary line and acquiescence therein, may indicate that the error in the description was not known at the time of the deal.

But the complainants' case does not rest upon the facts as they appeared at that time. After the Gauthier heirs became aware that the fence was not on the true line, they permitted the complainants to proceed to expend a large sum of money in developing this mine. A large part of the amount being expended on this disputed strip. But absolute knowledge of their rights on the part of the Gauthier heirs was not essential. It was known to them that the complainants were buying this entire tract for a definite purpose as one entire tract, and that reliance was being placed upon this apparent boundary line. Under these circumstances it was their duty to ascertain their rights, if in doubt. The case is not in this respect different in equity than it would appear, had the Gauthier heirs attempted to sell the entire parcel, including the Barabe tract. It was known to them that the complainant was purchasing a connected tract, and that the purchase from them was dependent upon such greater purchase. The transaction was in effect one, and known to defendants Gauthier to be such. Under these circumstances they should be held estopped. Bigelow on Estoppel, p. 610; 1 Current Law, p. 350; 3 Current Law, p. 523; *Thompson* v. *Borg*, 90 Minn. 209; *Rowell* v. *Weinemann*, 119 Iowa, 256; *Briscoe* v. *Puckett* (Tex. Sup.), 12 S. W. 978; *Spiller* v. *Scribner*, 36 Vt. 245;

*Spears* v. *Walker*, 1 Head (Tenn.), 166; *Merriwether* v. *Larmon*, 3 Sneed (Tenn.), 447; *Halloran* v. *Whitcomb*, 43 Vt. 306; 2 Pomeroy's Equity Jurisprudence (3d Ed.), §§ 782, 818.

It is broadly contended on behalf of the Gauthiers that title to land cannot be established by estoppel in this State. This is true as a general proposition; but in the leading case of *Hayes* v. *Livingston*, 34 Mich. 384, it was pointed out that the establishment of a boundary line is not supposed to affect title. And the cases from Vermont and Tennessee above cited were referred to with approval. See, also, *Reed* v. *Drake*, 29 Mich. 222; *Stewart* v. *Carleton*, 31 Mich. 270; *Mowers* v. *Evers*, 117 Mich. 93.

The decree is affirmed, with the costs of both courts against the appealing defendants.

McAlvay, Grant, and Blair, JJ., concurred.

Ostrander, J. (*concurring*). As I understand the position of appellants, it is in substance and effect that the triangular parcel of land in question is not described in the deed under which the Barabes held, nor in the deed under which they held, nor in the deed to complainants; that the reason for this is that in preparing the deed to the appellants in the Gauthier-Delorier partition or division of lands a mistake was made, the effect of which mistake was to fix the western boundary line east of the true western boundary of the land belonging to and attempted to be deeded to appellants; that if this mistake had not been made the deed to appellants would have included the land in question. This mistake has since been corrected by a court of equity, upon the application of appellants. Appellants sold to complainants with the mutual understanding that they owned and would convey the land directly east of and adjoining to the Barabe land, which would include the strip in question. That they did not in their deed correctly describe the land sold arose from the fact that the description in the Gauthier-Delorier deed was

followed. As the matter stands in this court, there are no asserted rights to this strip of land intervening the Gauthier-Delorier deed and the decree in this cause. In my opinion, the facts asserted on the part of appellants entitle complainants to have the deed from appellants reformed. The bill prays for such relief, the decree does not in terms grant it, and complainants have not appealed.

I concur, therefore, in affirming the decree.